*525 On rebearing,
FreemaN, J.,
delivered the following opinion:
An opinion was delivered in _this case at the last term, affirming the decree of the Chancellor, overruling- the demurrer to the bill of review filed by Mrs. Davis. A petition for rehearing was filed, which was not examined then for want of time. We have now re-examined the case and feel no hesitancy in reaffirming the views announced in the former opinion.
Without setting out the elaborate statements of the original bill, or the bill of review, which we may here say are both subject to the objection presented in' one of the demurrers filed, of being exceedingly argumentative. The points made in the record may be briefly stated to be as follows:
The original bill shows on its face, that some years since, Elizabeth Davis, then a married woman, desired to purchase a certain lot in the city of Memphis. Not having the money to make the cash payment of $500, she applied to Mrs. Durant, then Mrs. Holroyd, a widow, for the loan of that sum, promising to have the lot conveyed to her for her sole and separate use, free from the control of Davis the husband, and then to give Mrs. Holroyd a deed of trust or mortgage on the lot to secure the amount so borrowed. In addition to this it seems that some $60 was borrowed to be used for some other purpose. The note of Mrs. Davis was given for this money, which, on being told by an attorney that it was not binding on her by reason of her coverture, was procured to be also signed some time afterward by Davis *526 the husband. Mrs. Davis got the conveyance for the lot to her separate use, paying the balance of the purchase money, but as the bill alleges refused or failed to give the mortgage or deed of trust.
Her husband having died before commencement of this suit, the bill alleges that she refuses to pay the note, and insists that she is not bound by it because of her coverture. Upon this state of facts, a decree is sought subjecting the lot to payment of this note, cither on the ground of a resulting trust as having paid the purchase money to the extent of $500, or of being substituted to the vendor’s lien for this sum. The bill was taken for confessed and after an account of the amount due on the note, a decree was rendered declaring a lien on the lot, and ordering the same sold, which was done. Thereupon Mrs. Davis filed (he bill of review, to which there was a demurrer, which the Chancellor overruled, from which there is an appeal to this court.
This is clearly no case for substitution to the vendor’s lien. The right of substitution grows ordinarily out of a discharge by one joint debtor, of a debt for which the other was primarily liable, as in case of payment by a surety, he is entitled to be subrogated to all the liens and securities held by his creditor, for his reimbursement: 2d Lead. Cases in Eq., top of page 240. Nothing of the kind is found here, nor, in fact any element out of which the right of subrogation can arise. The money was not paid-in discharge of the debt due the vendor, which was a lien on the land; on the contrary, it was the cash *527 payment agreed to be made. Again, it was a loan to the purchaser on security of her own note, with a promise of a deed of trust, repelling the idea of discharging the purchaser’s debt, and looking to substitution as the means of reimbursement. In a word, the simple question is, whether a party, who loans another a sum of money to pay a debt, and takes his or her note for its payment, with a promise of a deed of trust to secure it also, by this transaction entitles himself in addition to be substituted to the right of the creditor whose debt has been paid by the money loaned. To this question we take it, there can be but one answer, and that in the negative.
There is equally as little room to maintain the position, that the facts raise a resulting trust in favor of complainant in the original bill. It is a case simply of a promise by a married woman to give a mortgage or a deed of trust to secure the payment of money loaned, for which she has given her promissory note. That this promise has been violated is cretainly true on the facts in this record, but how this can raise a resulting trust, simply because the money so loaned was paid on a lot purchased by the borrower, we have been unable to see. It is insisted however, that this is a case of outrageous fraud, and therefore a court of equity must give relief. It certainly has some of the worst- elements of bad faith, but no more than in any other case where a party promises that which the law will not enforce, and refuses to comply with his promise. It is not such fraud as a court of equity can relieve against, unless *528 we assume that the courts are authorized to declare such a promise, as is here shown, to be binding, and enforce it, notwithstanding the long settled principle that such a contract of a married woman is not binding, either at law or in equity. In fact, the promise to give the deed of trust on land, would not he enforced in any court, either against a married woman or a party free from disability, not being in writing. It had no binding legal force when made, and it was the folly of the other party to trust to it, against which the courts of equity can give no relief.
Looking then to the allegations of the original bill, as we can do on bill of review, and comparing it with the decree, we can see clearly that the decree is not warranted by the case made in the bill, which constitutes error of law apparent on the face of the decree. Eaton v. Dickinson, adm’r, 3 Sneed, 401. No decree was warranted, on the note against the married woman, from the allegations of the bill itself, and no lien whatever in any form, or right to sell the lot for satisfaction of the debt, could arise from said allegations. The decree holds her liable on the note, establishes a lien on the lot for its payment, and in these particulars, being inconsistent with the complainant’s case as set out in her bill, not warranted by it, the Chancellor properly overruled the demurrer, and we affirm his decree.